**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

Daniel Casanova

   v.                                                  Civil No. 10-cv-485-JD

Hillsborough County Department
of Corrections, James O'Mara,
Superintendent, et al.

## O R D E R

   Before the court is Daniel Casanova's Complaint (doc. no.
1) and his letters to the court (doc. nos. 6, 8, 11, and 13-16),
which contain factual allegations relating to his claims.  These
items (doc. nos. 1, 6, 8, 11, and 13-16), taken together, shall
be denominated hereafter as the complaint in this action.  The
complaint is before the court for preliminary review to
determine whether or not Casanova has stated any claim upon
which relief might be granted.  See 28 U.S.C. § 1915A; United
States District Court, District of New Hampshire, Local Rule
("LR") 4.3(d)(2).

   In the complaint, Casanova has claimed that defendants,
Hillsborough County Department of Corrections ("HCDOC")
Superintendent James O'Mara, the HCDOC Medical Department, and
HCDOC Nurse Foley, have violated his rights under the Eighth and

Fourteenth Amendments by failing to diagnose and treat his broken leg in a timely manner, by denying him adequate post-diagnosis treatment and medication for his broken leg, and for failing to treat broken ribs that he sustained, all while he was a pretrial detainee.

Casanova has further alleged that HCDOC Corrections Officer ("CO") Weatherbee assaulted him and broke his leg in 2008. Casanova also alleges that CO Boyle assaulted him and broke his ribs in 2010.

## Standard of Review

Under LR 4.3(d)(2), when an incarcerated plaintiff or petitioner commences an action pro se, the magistrate judge conducts a preliminary review.  Pro se pleadings are construed liberally to avoid inappropriately stringent rules and unnecessary dismissals.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976), to construe pleadings liberally in favor of pro se party); Castro v. United States, 540 U.S. 375, 381 (2003).  The magistrate judge may issue a report and recommendation after the initial review, recommending that claims be dismissed if the court lacks subject matter jurisdiction, the defendant is immune from the relief sought, the complaint fails to state a claim

upon which relief may be granted, the allegation of poverty is untrue, or the action is frivolous or malicious.  See LR 4.3(d)(2) (citing 28 U.S.C. § 1915A & Fed. R. Civ. P. 12(b)(1)).

To determine if the complaint states any claim upon which relief could be granted, the court applies a standard analogous to that used in reviewing a motion to dismiss filed under Fed. R. Civ. P. 12(b)(6).  The court decides whether the complaint contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  See Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S. Ct. 1937, 1949 (2009).

To make this determination, the court employs a two-pronged approach.  See Ocasio-Hernández v. Fortuño-Burset, No. 09-2207, 2011 WL 1228768, *9 (1st Cir. Apr. 1, 2011).  The court first screens the complaint for statements that "merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action."  Id. (citations, internal quotation marks and alterations omitted).  A claim consisting of little more than "allegations that merely parrot the elements of the cause of action" may be dismissed.  Ocasio-Hernández, 2011 WL 1228768 at *9.  The second part of the test requires the court to credit as true all non-conclusory factual allegations and the reasonable inferences drawn from those allegations, and

then to determine if the claim is plausible.  Id.  The
plausibility requirement "simply calls for enough fact to raise
a reasonable expectation that discovery will reveal evidence" of
illegal conduct.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556
(2007).  The "make-or-break standard" is that those allegations
and inferences, taken as true, "must state a plausible, not a
merely conceivable, case for relief." Sepúlveda-Villarini v.
Dep't of Educ., 628 F.3d 25, 29 (1st Cir. 2010); see Twombly,
550 U.S. at 555 ("Factual allegations must be enough to raise a
right to relief above the speculative level, on the assumption
that all the allegations in the complaint are true (even if
doubtful in fact)." (citations and footnote omitted)).

     Evaluating the plausibility of a claim is a "context-
specific task that requires the reviewing court to draw on its
judicial experience and common sense." Iqbal, ___ U.S. at ___,
129 S. Ct. at 1950 (citation omitted).  In doing so, the court
may not disregard properly pleaded factual allegations or
"attempt to forecast a plaintiff's likelihood of success on the
merits." Ocasio-Hernández, 2011 WL 1228768 at *9.  "The
relevant inquiry focuses on the reasonableness of the inference
of liability that the plaintiff is asking the court to draw from
the facts alleged in the complaint." Id.

**Background**

Daniel Casanova's claims in this case relate to two incidents, occurring in 2008 and 2010, when Casanova was in pretrial detention at the Hillsborough County House of Corrections ("HCHC").  Casanova asserts that CO Weatherbee beat him up and broke his leg in 2008, and CO Boyle beat him up and broke his ribs in 2010.  Casanova claims that he did not receive adequate medical care for either injury.[1]

A.   <u>Broken Leg</u>

On November 4, 2008, Casanova was outside his cell when he and another inmate began to argue.  Casanova took a step toward the other inmate, and CO Weatherbee told him to get on the ground.  Casanova was complying with that order by getting down when Weatherbee kicked him, punched him in the face, and pinned him to the floor by placing his knees on Casanova's back.  The attack hurt Casanova, and he told Weatherbee that his leg was broken.  Weatherbee picked Casanova up from the floor, put him

---

[1] Similar allegations are set forth in a new complaint filed by Casanova after this case was opened.  That new complaint has been docketed as a separate action, <u>Casanova v. Hillsborough Cnty. Dep't of Corrs.</u>, No. 11-cv-193-JL, and the claims asserted therein are the subject of an order issued this date in that case.

into a cell, and made him kneel on the floor.  Kneeling made the
pain worse.

Casanova's leg became badly swollen.  Because of the pain
and swelling, Casanova could not sleep, and it was unbearable
for him to stand on that leg.  Each day for about one week after
the incident, Casanova filed medical request slips about his
leg.  The HCHC Medical Department did not provide Casanova with
any diagnostic testing or treatment.  Instead, the nurses told
Casanova that he would be better in a few days.  Nurse Foley
told him that if he had broken his leg, he would not be able to
move it at all.  The Medical Department did not schedule
Casanova for an x-ray or provide any further treatment for him
at that time.

Almost one week later, on November 10, 2008, Casanova was
due to appear in court in Nashua, New Hampshire.  Because he
could not walk, the HCHC booking department arranged for
Casanova to be sent to Nashua by wheelchair transport.  When he
arrived in Nashua, Casanova told his public defender, Bonnie
Howard, that he was hurt, and that the HCHC Medical Department
would not help him.  Howard, upon seeing Casanova's badly
swollen leg, told the judge in Nashua that Casanova was injured,
directed her investigator to take photos of Casanova's leg, and

called HCHC to ask that Casanova be sent to the hospital for an x-ray. Howard's request was denied at that time, and Casanova was sent back to HCHC.

Howard's involvement brought the matter to the superintendent's attention. Thereafter, HCHC sent Casanova to the Elliot Hospital for an x-ray, which showed that Casanova's leg was broken. About ten days later, Casanova went to Dartmouth Hitchcock Medical Center for surgery, and four screws were implanted in his leg to repair the break. Although the surgeons prescribed post-surgery physical therapy for Casanova in November 2008, Casanova was released from HCHC more than six months later without having received any physical therapy. Casanova has asserted that he still walks with a pronounced limp and suffers pain most of the time, especially in damp weather.

Casanova was sent back to HCHC custody more than one year later, in August 2010, and remains in HCHC custody at this time. Casanova has asserted that the Medical Department has failed to give him the medication that he needs for the screws in his knee. See Letter (doc. no. 11). Casanova has not named the medication at issue or otherwise described its purpose.

B.   Broken Ribs

In a complaint addendum (doc. no. 16), Casanova alleges that on August 3, 2010, Casanova came back to the HCHC on new criminal charges.  On that day, CO Boyle took Casanova to the dressing room and kicked him in the left side, breaking Casanova's ribs.  Casanova asserts that Boyle assaulted him because he came back to HCHC on charges that he had committed a sex crime.  Although he suffers constant pain in his ribs, the Medical Department has failed to give Casanova any medication or other treatment for his injury or pain.

C.   Claims

Casanova has asserted the following claims under federal and state law as grounds for relief:

> 1.   Nurse Foley, the HCDOC Medical Department, and Superintendent O'Mara are liable under 42 U.S.C. § 1983 for violating Casanova's Fourteenth Amendment right to adequate medical treatment, by acting with deliberate indifference in: (a) denying Casanova timely treatment and diagnosis of a broken leg for seven days; and (b) denying Casanova physical therapy for his leg post-surgery.

> 2.   Defendants are liable under 42 U.S.C. § 1983 for violating Casanova's Fourteenth Amendment right to adequate medical treatment, by acting with deliberate indifference in denying him medications necessary to treat his leg in February 2011.

3.    Defendants are liable under 42 U.S.C. § 1983 for violating Casanova's Fourteenth Amendment right to adequate medical treatment, by acting with deliberate indifference in failing to treat his broken ribs.

4.    CO Boyle is liable to Casanova under 42 U.S.C. § 1983 for Boyle's use of excessive force in violation of Casanova's Fourteenth Amendment rights when Boyle assaulted Casanova on August 3, 2010, breaking Casanova's ribs.

5.    CO Weatherbee is liable to Casanova under 42 U.S.C. § 1983 for Weatherbee's use of excessive force in violation of Casanova's Fourteenth Amendment rights when Weatherbee assaulted Casanova on November 4, 2008, breaking Casanova's leg.

6.    Defendants (a) Weatherbee, Boyle, and HCDOC are liable under state law for the injuries caused by the 2008 and 2010 assaults on Casanova; and (b) Nurse Foley and the HCDOC Medical Department are liable for injuries caused by their medical malpractice for the delay in diagnosing Casanova's broken leg and in failing to provide physical therapy to him post-surgery.


**Discussion**

I.    Federal Claims under 42 U.S.C. § 1983

Section 1983 creates a cause of action against those who, acting under color of state law, violate federal constitutional or statutory law.  See 42 U.S.C. § 1983; Wilson v. Town of Mendon, 294 F.3d 1, 6 (1st Cir. 2002).  Here, Casanova has claimed that defendants, all state actors, have violated rights accruing to him under federal law.  As such, this action presents claims arising under § 1983 (identified as Claims 1-5

9

above), along with state law claims (grouped together above as
Claim 6).  The viability of these claims is discussed below.

### A.   Pretrial Detainee Status and Due Process Rights

Casanova was a pretrial detainee at the HCHC at the time
the events at issue occurred.  Casanova's claims relating to
medical care and other conditions of confinement, therefore,
must be analyzed under the Fourteenth Amendment.  See Mosher v.
Nelson, 589 F.3d 488, 493 n.3 (1st Cir. 2009) (citing Burrell v.
Hampshire Cnty., 307 F.3d 1, 7 (1st Cir. 2002)); see also Lyons
v. Powell, 838 F.2d 28, 29 (1st Cir. 1988) (per curiam)
(rejecting Eighth Amendment challenge to pretrial detention).
Accordingly, the court has construed Casanova's federal claims
as asserting violations of his Fourteenth Amendment rights only,
and not his Eighth Amendment rights.

Detainees have a constitutional right under the Due Process
Clause to be free from punishment.  See Surprenant v. Rivas, 424
F.3d 5, 15 (1st Cir. 2005) (citing O'Connor v. Huard, 117 F.3d
12, 15 (1st Cir. 1997)).  "'[T]he State does not acquire the
power to punish with which the Eighth Amendment is concerned
until after it has secured a formal adjudication of guilt in
accordance with due process of law.'"  Martínez-Rivera v.
Sánchez Ramos, 498 F.3d 3, 9 (1st Cir. 2007) (quoting Ingraham

v. Wright, 430 U.S. 651, 671-72 n.40 (1977)).  However, challenged conditions or restrictions which can be rationally related to some legitimate administrative goal or security concern generally will not be deemed unconstitutional "punishment."  O'Connor, 117 F.3d at 15.  Because the Due Process Clause prohibits the infliction of punishment on a person prior to a judgment of conviction, the issue in evaluating claims by a pretrial detainee is ultimately whether the conditions of confinement were reasonably related to a legitimate state interest or were intended instead as punishment for the detainee's charged offense.  See Surprenant, 424 F.3d at 13; Collazo-Leon v. U.S. Bureau of Prisons, 51 F.3d 315, 317 (1st Cir. 1995).

    B.    Attacks by Weatherbee and Boyle

    The Fourteenth Amendment protects a pretrial detainee from excessive force that amounts to punishment.  See Ruiz-Rosa, 485 F.3d at 155; Surprenant, 424 F.3d at 18.  In determining whether a plaintiff has stated a claim for unconstitutionally excessive force, a court should look to the following four factors: (1) the need for the use of force, (2) the relationship between the need and the amount of force that was used, (3) the extent of injury inflicted, and (4) "whether the force was applied in good

11

faith to maintain or restore discipline or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992).

Casanova has alleged that he has suffered broken bones due to CO Weatherbee and CO Boyle attacking him.  CO Weatherbee attacked Casanova in response to Casanova arguing with another inmate and stepping towards that inmate.  Weatherbee ordered Casanova to go down to the ground.  Casanova was complying with that order when CO Weatherbee struck him in the face and kicked him.  The attack broke Casanova's leg.  Nothing in the complaint suggests that Casanova provoked the attack or failed to comply with Weatherbee's directions.

There are no allegations suggesting that any misconduct by Casanova on August 3, 2010, triggered CO Boyle's attack. Rather, Casanova states Boyle beat him up to punish him for the sex charges pending against him.  Taking the allegations in the complaint and all reasonable inferences to be true, the court finds that Casanova has stated claims that Weatherbee and Boyle used excessive force against him, in violation of his Fourteenth Amendment rights.

While Casanova has not specifically listed Weatherbee and Boyle as defendants, it appears that he intended to assert due

process claims against them for their assaults.  Accordingly,
the court has construed the complaint to assert such claims.

The court has not found reason to construe the complaint to
assert any section 1983 "excessive force" claims against the
remaining defendants.  If Casanova seeks to add O'Mara or
Hillsborough County to the section 1983 assault claims, he must
properly move to amend the complaint to show a basis for finding
supervisory or municipal liability for the assaults.  See
Connick v. Thompson, ___ U.S. ___, ___, 131 S. Ct. 1350, 1359
(2011) (municipalities may not be held vicariously liable under
section 1983); Maldonado v. Fontanes, 568 F.3d 263, 275 (1st
Cir. 2009) (supervisory liability under section 1983 lies only
where "supervisor's conduct led inexorably to the constitutional
violation"); Young v. City of Providence ex rel. Napolitano, 404
F.3d 4, 25 (1st Cir. 2005) ("it is only when the governmental
employees' 'execution of a government's policy or custom . . .
inflicts the injury' and is 'the moving force' behind the
constitutional violation that a municipality can be liable"
under section 1983 (citation omitted)).

   C.   Medical Care

The standard to be applied to a pretrial detainee's
Fourteenth Amendment claim, asserting that he has suffered a

13

denial of adequate medical care while in custody awaiting trial
on criminal charges, is essentially the same as that applied to
claims asserted by convicted criminals under the Eighth
Amendment's cruel and unusual punishment clause.  See
Surprenant, 424 F.3d at 18 (liberty interests at stake in
Fourteenth Amendment claim of detainee "are coextensive with
those of the Eighth Amendment's prohibition against cruel and
unusual punishment").  The Eighth Amendment shields convicted
prison inmates from prison officials acting with deliberate
indifference to their serious medical needs.  See Farmer v.
Brennan, 511 U.S. 825, 831 (1994).  The Supreme Court has
adopted a two-part test for reviewing medical care claims under
the Eighth Amendment.  See id. at 834.  A court must first
determine if the prisoner has alleged facts sufficient to show
that he or she has not been provided with adequate care for a
"serious medical need."  Id.  Second, the court must determine
if the complaint contains sufficient allegations to show that
defendants acted with deliberate indifference in failing to
provide adequate care to address that serious need.  See id.
Allegations that simply show "substandard care, malpractice,
negligence, inadvertent failure to provide care, and
disagreement as to the appropriate course of treatment are all

insufficient to prove a constitutional violation."  Ruiz-Rosa v.
Rullan, 485 F.3d 150, 156 (1st Cir. 2007).

      1.   Broken Leg

        a.   Serious Needs & Inadequate Care

A serious medical need is one that involves a substantial
risk of serious harm to the prisoner if it is not adequately
treated.  See Barrett v. Coplan, 292 F. Supp. 2d 281, 285
(D.N.H. 2003); see also Gaudreault v. Mun'y of Salem, 923 F.2d
203, 208 (1st Cir. 1990) (defining serious medical need as one
"that has been diagnosed by a physician as mandating treatment,
or one that is so obvious that even a lay person would easily
recognize the necessity for a doctor's attention").  If a
medical care claim is based on delayed provision of care, the
inquiry is whether the delay caused or gave rise to a
substantial risk of serious harm to the prisoner.  See Chambers
v. N.H. Prison, 562 F. Supp. 2d 197, 200 (D.N.H. 2007).

Here, Casanova knew from the pain in his knee that his leg
was broken.  For the next week, Casanova suffered debilitating
pain and swelling in his leg, causing him to lose sleep and
making it increasingly difficult to stand or walk.  He
complained about his leg daily to the HCHC Medical Department.

Nearly one week after the incident, on November 10, 2008, Casanova could not walk, and the HCHC booking department arranged for him to appear at court in a wheelchair.  At the courthouse, Casanova's public defender saw his badly swollen leg and recognized that he needed medical attention.  A subsequent x-ray confirmed the break, and surgeons thereafter repaired it by inserting four screws into Casanova's knee.  The surgeons prescribed physical therapy for Casanova post-surgery, and prison officials aware of that prescription did not provide it. Casanova has a limp and continuing pain today.  Taking all of the factual allegations in the complaint and the addenda to be true, the court finds that the one-week delay before Casanova's broken leg was properly diagnosed and treated, and the complete failure to provide him physical therapy post-surgery, constituted inadequate care and gave rise to a substantial risk of serious harm to Casanova.

### b.   Deliberate Indifference

To be found deliberately indifferent, a prison official must be both subjectively aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he or she must also actually draw the inference. See Farmer, 511 U.S. at 837.  Deliberate indifference "may be

16

shown by the denial of needed care as punishment and by
decisions about medical care made recklessly with 'actual
knowledge of impending harm, easily preventable.'" Ruiz-Rosa,
485 F.3d at 156 (citation omitted).  "In order to establish
deliberate indifference, the complainant must prove that the
defendants had a culpable state of mind and intended wantonly to
inflict pain." Braga v. Hodgson, 605 F.3d 58, 61 (1st Cir.
2010) (internal citation and quotations omitted).  Deliberate
indifference may be found "in wanton decisions to deny or delay
care, where the action is reckless, not in the tort law sense
but in the appreciably stricter criminal-law sense." Watson v.
Caton, 984 F.2d 537, 540 (1st Cir. 1993) (internal citation and
quotations omitted).

### i.   X-Ray and Physical Therapy

Casanova has alleged that Nurse Foley and other HCDOC
Medical Department nurses were aware of his deteriorating
condition, but did not order an x-ray or otherwise examine him
in a manner that would reveal the broken bone until his public
defender raised the issue with Superintendent O'Mara.  Casanova
further alleges that the Medical Department knew that after
surgery, his surgeons had prescribed physical therapy for him,
but failed to provide such care to him during the six months he

spent at the HCHC after surgery.  The facts alleged in the complaint are sufficient to raise an inference that Nurse Foley and other unnamed Medical Staff members were aware of and deliberately indifferent to Casanova's serious medical needs both prior to and after the surgery in November 2008.  If Casanova wishes to pursue claims against unnamed members of the Medical Department staff, in addition to Nurse Foley, he must obtain their full names and amend the complaint to add them as defendants.

With respect to Superintendent O'Mara, however, Casanova's allegations are not sufficient to establish deliberate indifference at this time.  Casanova has not alleged that he filed any grievances regarding the lack of attention to his broken leg, or that O'Mara otherwise was aware of the issue prior to November 10.  Casanova has specifically alleged that after his public defender brought the issue to O'Mara's attention on November 10, his leg was x-rayed, and surgical repairs were made.  Further, Casanova has not alleged any facts that would allow this court to find that O'Mara was aware of, much less that he was deliberately indifferent to, Casanova's prescription for post-surgical physical therapy.  These allegations belie any claim that O'Mara was deliberately

indifferent to Casanova's need for proper diagnosis or treatment
of Casanova's broken leg in 2008.  Unless properly amended to
include allegations of O'Mara's deliberate indifference, this
claim is subject to dismissal.

By the same token, the allegations as to the HCDOC Medical
Department are insufficient to state a claim.  The Medical
Department is an agency of Hillsborough County.  Municipalities
-- including New Hampshire counties -- may not be held
vicariously liable under § 1983 for their employees' actions.
See Connick, ___ U.S. at ___, 131 S. Ct. at 1359.  "[I]t is only
when the governmental employees' 'execution of a government's
policy or custom . . . inflicts the injury' and is 'the moving
force' behind the constitutional violation that a municipality
can be liable."  Young, 404 F.3d at 25.  Here, Casanova has
asserted no factual allegations suggesting that the county had
any policy or custom that led to the care he received for his
injuries.  To avoid dismissal of this claim, Casanova must amend
the complaint to add such allegations.

## ii.  Medication

Casanova has asserted that defendants are liable for
violating his Fourteenth Amendment right to adequate medical
care in that, in 2011, more than two years after his knee was

19

repaired, he did not receive any medication for the screws in
his knee.  <u>See</u> Letter (doc. no. 11).  Casanova has not named the
type of medication at issue or the purpose for which he needs
those medications.  Nor has he asserted that he complained or
grieved about the lack of medication to any HCDOC staff member
or administrative official.  Accordingly, Casanova has failed to
allege sufficient facts to state a plausible claim of deliberate
indifference to a serious medical need, with respect to the
failure to provide him with medication for his knee.  To avoid
dismissal of this claim, Casanova must amend the complaint, as
directed below.

>        2.   <u>Broken Ribs</u>

Casanova has asserted that he has received inadequate care
for a rib injury sustained when CO Boyle beat him up in August
2010, and that defendants are liable to him under 42 U.S.C.
§ 1983 for that denial of care.  Casanova has failed to allege
any facts, however, that show that any prison official has been
deliberately indifferent to his rib pain.  Casanova has not
specifically asserted that he has complained about needing
treatment to any staff member.  Nor has he identified any staff
member otherwise aware of that need.  Casanova has also failed
to allege that he filed any medical request slips or grievances

regarding his need for treatment.  These omissions make any claim of deliberate indifference speculative.  To avoid dismissal of his claim relating to his broken ribs and pain, Casanova must amend the complaint as directed below.

II.  _State Law Claims_

This court has supplemental jurisdiction over the state law claims that arise out of the same case or controversy as the section 1983 claims.  _See_ 28 U.S.C. § 1367.  Under state law, a person who intentionally strikes and injures another may be liable in tort, _see_ _Silva v. Warden_, 150 N.H. 372, 374, 839 A.2d 4, 6 (2003), and that person's employer may be held vicariously liable if the act was performed in part to serve the employer, _see_ _Daigle v. City of Portsmouth_, 129 N.H. 561, 580-81, 534 A.2d 689, 699-700 (1987).  Furthermore, a plaintiff states a viable claim of medical malpractice in alleging that he or she suffered injuries proximately caused by a health care provider's failure to provide care consistent with the standard of reasonable professional practice at the time the care was rendered.  _See_ _Beckles v. Madden_, 160 N.H. 118, 124, 993 A.2d 209, 214 (2010) (citing N.H. Rev. Stat. Ann. 507-E:2).

Casanova's intent to assert state law medical malpractice claims against Foley and the HCDOC Medical Department, and

assault and battery claims, as to Weatherbee, Boyle, and HCDOC, is inferred from the complaint.  The allegations in the complaint supporting those claims are sufficient to state claims upon which relief might be granted.  Should he seek to assert similar claims against other defendants, Casanova must obtain their full names and seek leave to amend the complaint accordingly.

### Conclusion

For reasons set forth more fully above, and pursuant to LR 4.3(d)(2)(B), the court hereby grants Casanova leave to file an amended complaint within 30 days of the date of this Order.  In the amended complaint, Casanova shall state, with specificity, as to his claims regarding his rib injury and pain and the medication needed to treat his knee:

(1)  The name of the Medical Department staff members who knew of Casanova's rib injury and pain, or his need for medication for his knee in 2010 and 2011.

(2)  What that person knew about Casanova's injury and pain or other medical needs relating to his ribs or knee in 2010 and 2011, and how that person knew about Casanova's injury and pain or other medical needs relating to his ribs or knee.

(3)  Whether Casanova filed any grievance or medical request slips relating to his rib injury and pain since August 3, 2010, and his knee since it was repaired

surgically, and the specific facts asserted in those grievances or medical request slips.

(4)   The nature of any diagnostic tests or treatment provided to him relating to his rib injury or pain, and the name or type of medication needed for his knee, and the purpose for which he needed that medication for his knee.

(5)   Additional facts showing that defendants acted with deliberate indifference in failing to provide adequate care for Casanova's knee since it was surgically repaired, and in failing to diagnose or treat his rib injury and pain since August 3, 2010.

(6)   Any additional facts showing that a policy or custom of the HCDOC Medical Department resulted in the type of treatment received by Casanova.

Failure to file an amended complaint as directed may result in a recommendation that the claims at issue be dismissed for failure to state a claim upon which relief can be granted.

SO ORDERED.

Landya McCafferty
United States Magistrate Judge

Date: May 17, 2011

cc:  Daniel Casanova, pro se

LBM:nmd